UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID WILSON,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

    Defendants.

Civil Action No.  13-2053 (JEB)

## MEMORANDUM OPINION

Currently serving a 40-year sentence for aiding and abetting a double murder, *pro se* Plaintiff David Wilson brought this Freedom of Information Act suit seeking exculpatory material.  In particular, he hopes to obtain a tape recording of a conversation between a police informant and another man, which he claims will exonerate him.  This Court previously denied the Government's first Motion for Summary Judgment, holding that Defendants could not refuse to confirm or deny the recording's existence.  Having now conducted a thorough search and come up empty, the Government renews its request for summary judgment.  This time around, the Court agrees that the Motion should be granted.

**I.    Background**

In this FOIA suit against the Department of Justice and the Executive Office of United States Attorneys, Wilson seeks a tape recording in which two men discuss the murders of which he was convicted and, he believes, demonstrate that he did not participate in the killings.  As the Court's prior Opinion explains in detail both how Wilson landed in prison and the full context of the recording and the voices purportedly captured, see Wilson v. U.S. Dep't of Justice, 2014 WL

1

2115508 (D.D.C. May 21, 2014), no repeat of the narrative is necessary here. Suffice it to say that EOUSA initially issued a so-called "Glomar response," refusing to confirm or deny the existence of the record responsive to Wilson's request. See Compl., App'x B (EOUSA FOIA Response) at 1. In denying the Government's prior Motion for Summary Judgment, the Court concluded that "DOJ has identified no privacy interest adequate to justify its Glomar response." Wilson, 2014 WL 2115508, at *7. This meant that "DOJ must – at a minimum – confirm or deny whether the record Wilson is seeking exists. If it does, DOJ must either turn it over or explain the reasoning behind its withholding." Id.

Returning to the drawing board, the Government then commenced its search as ordered. Karin Kelly, a Paralegal Specialist and FOIA Coordinator in the Civil Division of the U.S. Attorney's Office for the District of Columbia, began by logging into the Public Access to Court Electronic Records (PACER) system, which led her to the AUSAs who had handled Wilson's trial and appeal. See Mot., Declaration of Karin Kelly, ¶¶ 1, 7-9. They and their Legal Assistant, in turn, located the case file, which consisted of no fewer than 160 numbered boxes, each of which "contain[ed] a comprehensive index" on the "contents of each box." Id., ¶¶ 8-10. Kelly then looked through the indices for references to "Bobby Capies [the alleged informant], Ronnie Middleton . . . or Jackie Bradley [the two victims]," as well as "Cooperator Files," "Wire Minimization Sheets," and "Jencks Packages." Id., ¶ 11. "Of the 13 boxes of documents that [she] reviewed, most were not responsive to Mr. Wilson's request. [She] did, however, find one and one half boxes that contained information regarding the [two] murders." Id., ¶ 12. Although Kelly did find a written account of the conversation Plaintiff is seeking (which account he already has), she "did not find an actual recording of the conversation, nor did [she] find a transcript of the conversation." Id., ¶ 14.

EOUSA has also provided the corroborating Declaration of David Luczynski, the Attorney Advisor at EOUSA, who avers, "All responsive documents to plaintiff's FOIA request would have been located in the USAO/DDC.  There are no other records systems or locations within EOUSA or DOJ in which other files pertaining to plaintiff's criminal case were maintained."  Luczynski Decl., ¶ 6.

Given that EOUSA has completed its search, albeit without success, it now renews its Motion for Summary Judgment.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case,

the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

### III.    Analysis

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to

4

sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

As noted previously, the central issue for the Court to resolve here is whether EOUSA's search detailed above is adequate. In addition, while Defendants' Motion for Summary Judgment was pending, Plaintiff moved to add the District of Columbia's Metropolitan Police Department as a Defendant. The Court considers each question separately.

   A.  Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. Id.

In addition, identifying a document that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate. See Boyd v. Criminal Div. of Dep't of Justice, 475

F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search."); Wilbur v. CIA, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[T]he agency's failure to turn up a particular document . . . does not undermine the determination that the agency conducted an adequate search for the requested records."). The existence of particular undisclosed documents is not conclusive because any individual document may have been lost, destroyed, or not retained in the first place. See Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). Hence, the "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Id.; see also Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).

      The Court is satisfied here that EOUSA has conducted a sufficiently thorough search. As set forth above, FOIA Coordinator Karin Kelly retrieved all 160 boxes pertaining to Wilson's prosecution and reviewed the material in the relevant ones. Kelly's diligence is bolstered by the fact that she successfully located the memo that discussed the taped conversation. Luczynski, furthermore, has testified that no other records systems or locations would have the requested tape recording. See Luczynski Decl., ¶ 6.

      Wilson nonetheless offers three challenges to the adequacy of EUOSA's search. He first contends that Defendant should have checked the Legal Information Network System (LIONS) in addition to PACER. Yet, as Kelly elucidates, "Compiling documents associated with a case is not a function of LIONS. LIONS is used to . . . identify a case number, check the status of a case and list any attorneys that may have been assigned to the case at any time." Reply, Supplemental Declaration of Karin Kelly, ¶ 10. Since she had already located the case files, "checking LIONS would have been superfluous." Id., ¶ 8.

Plaintiff next maintains that Kelly should have talked to the actual AUSAs who prosecuted him. Although she did speak to the assistant handling Wilson's appeal, she did not connect with one of the trial assistants, despite leaving messages for him. See Kelly Decl., ¶ 17. Yet there is no indication that this AUSA could have done anything more than point Kelly to the boxes she had already located. The fact that she was not able to interview him does not undermine the comprehensiveness of the search.

Finally, Wilson alleges that Luczynski's declarations are contradictory and, therefore, evidence of bad faith. In particular, seizing on explanatory language in the February 5, 2014, declaration, Plaintiff asserts that Luczynksi there admits that the audio recording is in EOUSA's possession, but is exempt from disclosure. Such an argument misapprehends the meaning of the declarations. Luczynski's February declaration has a clear heading entitled "Justification for Lack of a Search," which makes manifest that EOUSA conducted no search for the recording, relying instead on its later-discredited Glomar response. See Luczynski Decl. at 4. Although some generic language mentions withholding, see id., ¶¶ 12-15, this is in an effort to explain that the Glomar response is based on Exemption 7(C), not to admit that EOUSA has actually conducted a search, found the responsive recording, and withheld it.

The Court, therefore, concludes that EOUSA's search is sufficient.

B. Joinder of MPD

On February 7, 2012, Wilson sent a FOIA request to the District of Columbia's Metropolitan Police Department, asking for the same tape recording. See Motion to Join at 1-2. This makes sense since the documents that initially alerted Wilson to the undercover operation and the taped recording were MPD memos. See Reply to First MSJ (ECF No. 12), Exh. 1 (Custodial Interview of Bobby Capies); id., Exh. 2 (Controlled Operation Involving a

Confidential Source).  MPD, without confirming or denying the existence of such recording, denied Plaintiff's request.  <u>See</u> Motion to Join, App. D (Oct. 16, 2012, Letter) at 1.  On September 2, 2014, almost two months after Defendants DOJ and EOUSA had filed their Motion for Summary Judgment, Wilson then filed a Motion to Join MPD as a Defendant in this suit.  <u>See</u> ECF No. 22.

Yet Plaintiff now runs into a jurisdictional wall.  The federal FOIA statute only covers records of <u>federal</u> agencies, <u>see</u> 5 U.S.C. § 552(f), a definition plainly inapplicable to MPD.  The Court, as a result, has no subject-matter jurisdiction to consider an independent local claim against MPD.  Instead, Plaintiff must follow the rules contained in the District of Columbia's own FOIA statute, D.C. Code § 2-531 *et seq.*, which permits the filing of an action in D.C. Superior Court to seek review of MPD's denial of his request.  Indeed, the letter MPD sent him, which he attaches to his Motion to Join, states as much.  <u>See</u> Oct. 16, 2012, Letter at 1 ("you have the right to appeal this letter to the Mayor or to the Superior Court of the District of Columbia").

The Court, consequently, must deny Wilson's Motion to Join.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment and deny Plaintiff's Motion to Join.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  <u>October 17, 2014</u>